UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CASEY BINGHAM,<br><br>                       Plaintiff,<br><br>    v.<br><br>JEFFERSON COUNTY,<br><br>                       Defendant. | Case No. 4:15-cv-00245-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Jefferson County's Motion for Summary Judgment. Dkt. 12. This Motion was originally filed on May 26, 2016; however, the Court granted extensions of time so that the parties could take depositions, conduct further discovery, and file supplemental briefs. The Motion became ripe on July 31, 2017. The Court heard oral argument on September 25, 2017, and took the matter under advisement. For the reasons set forth below the Court will **GRANT** in part and **DENY** in part.

## II. BACKGROUND

*A. Factual Background*

Plaintiff, Casey Bingham, began working for Jefferson County in 2006. During her tenure with the County, Bingham held various positions, for which certain certifications and licensures were required. For example, as a truck driver in the Road and Bridge Department, Bingham became a Road Master and Road Scholar, and while working with the Weed Department on a cost-share program, Bingham received her pesticide applicator license. Jefferson County paid for these trainings and certifications. During the time period giving rise to

the events in question, Bingham was an administrative assistant for the Public Works Department within Jefferson County.

During June and July of 2014, Bingham attended training workshops related to weed remediation and later participated in a weed-spraying project with a County vehicle. Plaintiff asserts that the trainings were approved and relevant to her job duties and necessary to keep her Road Master Certification current. Defendant claims that Bingham did not have prior authorization to attend the workshops, that they were not relevant to her position as an administrative assistant in the Public Works Department, and that any projects she undertook for the Road and Bridge Department were unauthorized and inappropriate because her time was not billed to that department.

Also during July, Paul Snarr was appointed as the Public Works Administrator. The interim director who Snarr replaced, Jerry Ramirez, talked with Snarr regarding the training issues with Bingham. On July 17, 2014, Snarr prepared, but did not serve on Bingham, a disciplinary action form related to the unauthorized trainings and unauthorized use of County equipment.

In September of 2014, Bingham, along with other Jefferson County employees, attended a Federal Emergency Management Agency (FEMA) training in Baltimore, Maryland. After returning home, Bingham expressed concerns regarding the misuse of public funds on the trip by certain employees. In her estimation, some employees had misused funds by traveling earlier than the conference, staying later, and/or using County funds for personal expenses and sightseeing. Most of these comments were directed at Emily Kramer. Plaintiff refers to such conversations and statements as whistleblowing while Defendant characterizes them as gossip and rumors.

On October 30, 2014, Bingham attended an ATV training. She claims she had pre-approval for the event and that her time card, which included the training, was signed by her supervisor. As with the first instance that gave rise to a disciplinary action form, Defendant states that there was no pre-approval for the course and that it had nothing to do with her job duties. As a result of this incident, a second disciplinary action form was filled out against Bingham.

On November 17, 2014, Jefferson County served Bingham and the County Attorney with both disciplinary forms—for the July weed training and work, as well as the October ATV training. Jefferson County terminated Bingham the same day.

On November 26, 2014, Bingham requested a "name-clearing" hearing pursuant to the Jefferson County Personnel Policy. Jefferson County held such a hearing on December 22, 2014; however, it did not change Jefferson County's position and Bingham's termination was upheld.

*B. Procedural Background*

On July 6, 2015, Bingham initiated this lawsuit against Jefferson County and Jefferson County Public Works Department. As a threshold matter the Court notes that while there is a Public Works Department within Jefferson County, it is not a separate legal entity from Jefferson County. The Defendant known as Jefferson County Public Works Department will therefore be removed from the caption of this case.[1] Jefferson County is the appropriate defendant, and by design includes the Public Works Department. As the Court noted during oral argument, in removing the Public Works Department, the Court is not expressing any opinion or making any ruling on the merits of the claims against the Public Works Department as they are claims against

---

[1] Since Jefferson County Public Works Department is a fictitious entity, it cannot technically be dismissed from the lawsuit. All further proceedings should only list Jefferson County as a defendant.

the County. The Court will, therefore, take up only the claims against Jefferson County and address each in turn.

In her Complaint, Bingham alleges four causes of action. Count I asserts violations of the Idaho Public Employee Protection Act/Wrongful discharge. This is commonly referred to as a "whistleblower" claim. Count II is for the Deprivation of Plaintiff's Property and Liberty Interests without Due Process in violation of 42 U.S.C. § 1983. Count III is for violations of Article I, Section 9 of the Idaho Constitution and Count IV alleges violations of the First Amendment of the United States Constitution. Both Counts III and IV are free speech claims: one under the Idaho Constitution and one under the Federal Constitution.

Jefferson County moved for summary judgment on all counts on May 26, 2016. Thereafter, the Honorable Ronald E. Bush issued various orders extending discovery deadlines so that additional depositions could be taken, extending the briefing schedule for this Motion, and striking various portions of counsel's declarations. Upon completion of the additional discovery, counsel filed supplemental briefing and this matter became ripe for review.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted).

In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the

respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. ANALYSIS

The Court notes at the outset that there appears to be numerous factual disputes in this case. One only need look at either party's statement of facts to see stark differences in the remembrance and recitation of the circumstances giving rise to this suit. As stated, the parties took additional depositions in this case. Both sides feel that these depositions bolster their respective positions.

Although the Court does not weigh the evidence at this time, but only seeks to determine if there are true controverted issues of fact, incorporated in the briefing are statements taking from said depositions which blatantly contradict statements from both parties in this case, as well as other witness's testimonies. The facts, however, must be measured against the legal backdrop of the claims to determine if they survive at all (even if there are disputed factual issues). The Court will address each claim in turn.

    A. <u>Count I – Whistleblower Claim</u>

In Count I of her Complaint, Bingham alleges that Jefferson County violated the Idaho Public Employee Protection Act and wrongfully discharged her for speaking out about the

misuse of County funds. She claims she was essentially a "whistleblower" who was retaliated against.

Idaho Code § 6-2104 provides:

An employer may not take adverse action against an employee because the employee, or a person authorized to act on behalf of the employee, communicates in good faith the existence of any waste of public funds, property or manpower, or a violation or suspected violation of a law, rule or regulation adopted under the law of this state, a political subdivision of this state or the United States.

A claim under this statute must be brought within a specified period. Idaho law indicates, "an employee who alleges a violation of this chapter may bring a civil action for appropriate injunctive relief or actual damages, or both, within one hundred eighty (180) days after the occurrence of the alleged violation of this chapter." Idaho Code § 6-2105(2).

In this case, the alleged violation of this chapter—or the adverse action taken against her for speaking out about misuse of funds—was her termination from Jefferson County on November 17, 2014. This would have required Bingham to file her Complaint on or before May 16, 2015. Bingham did not meet that deadline, filling her claim on July 6, 2015, therefore her claim is time-barred. *See Patterson v. State, Dept. of Health & Welfare,* 256 P.3d 718 (2011).

Bingham tries to get around the time requirement by citing another section of this statute that states, "an employer shall use appropriate means to notify its employees of their protection and obligation under this chapter." Idaho Code § 6-2109. Bingham argues that this "puts an affirmative duty upon the employer to notify employees of their protections under the Act," (Dkt. 14, at 3) and, therefore, Jefferson County is "precluded from relying on the time periods in I.C. § 6-2105(2)." *Id.* Plaintiff cites no authority for such an interpretation of § 6-2109. Alternatively, Bingham claims that Jefferson County is estopped from raising timing as a defense and presents an equitable estoppel argument in her favor.

The Court will not delve into a further discussion of either Idaho Code § 6-2109 or equitable estoppel as this combination has been put forth and summarily rejected in Idaho in relation to an employer utilizing the time requirement as a defense to a wrongful termination suit. In *Lee v. Olsen,* Plaintiff Lee took the exact same approach as Bingham when his former employer moved to dismiss his Whistleblower claim on timeliness grounds:

> Lee counters that Defendants are estopped from raising this defense because they follow state law which required that an employer "shall use appropriate means to notify its employees of their protection and obligation under this chapter." Idaho Code § 6-2109.
>
> Lee contends that a "defendant may be estopped to rely upon the statute of limitation if his statements or conduct caused the plaintiff to refrain from prosecuting an action during the limitation period." *Mason v. Tucker and Associates*, 871 P.2d 846, 850 (Idaho Ct. App. 1994). In that case, the court held that a plaintiff could use equitable estoppel to preclude a statute of limitations defense, but "only for so long as plaintiff did not know and could not discover the truth . . ."
>
> The statute of limitations in Idaho Code § 6-2105 could have been discovered by Lee at any point. Lee was represented by counsel as early as August 31, 2012. There was nothing preventing Lee, and importantly, not any acts of the Defendants preventing Lee, from "discovering" the fact of this statute and its limitation on when an action must be brought. Additionally, there is nothing in the Act that places an affirmative duty upon an employer to tell an employee of the deadline for filing a lawsuit. Defendants are not equitably estopped from asserting I.C. § 6-2105(2) as a defense to Lee's claim.

No. 4:14-CV-00160-REB, 2016 WL 5660403, at *9 (D. Idaho Sept. 29, 2016). Here, Bingham cited the exact same case as Lee for her equitable estoppel position (which the Court rejected), and while the Court is unaware of when Bingham retained legal representation in this case,[2] there

---

[2] Jefferson County in their briefing indicates that Bingham has been represented since her name-clearing hearing on November 26, 2014; however, the Court has no independent verification of this.

is no indication that anything occurred which prevented Bingham from discovering the requisite deadline.

Bingham filed her Notice of Tort Claim against Defendants on December 12, 2014, a full five months before the deadline. She was fully aware that a lawsuit was forthcoming and should have taken the appropriate steps to ensure that her claims were valid and timely. Additionally, as the Court noted in *Lee*, there is nothing in the Whistleblower Act which supports the idea presented by Lee and Bingham that an employer is required to tell an employee the deadline for filing suit. Placing this burden on employers is unreasonable. Such has already been rejected by this Court.

Bingham's Whistleblower claim under Idaho Code § 6-2104 was untimely. As the Court noted during oral argument, summary judgment is appropriate as to this claim and it is dismissed.[3]

    B.  Count II – Due Process Claim

Broadly speaking, Bingham's second cause of action claims that she was deprived of a property and liberty interest without due process of law in violation of 42 U.S.C. § 1983. The property and liberty interest here is Bingham's employment with Jefferson County.

To state a claim against a local government entity under § 1983, a plaintiff must allege a violation of rights, either protected by the Constitution or created by federal statute, that is

---

[3] The Court notes that while the whistleblower claim is dismissed, that does not mean that the Court takes a position on whether Bingham engaged in "whistleblowing" or whether such acts were the cause of Bingham's termination. The Court declines to reach the merits of the claim as it is statutorily barred.

proximately caused by the conduct of a "person" acting under the color of state law. *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.1991).

1. Property Interest

To state any claim under § 1983, Bingham must establish that she possessed a property interest deserving of constitutional protection. While state law establishes the parameters of an individual's substantive interest, federal law is what determines if that interest is a protected property right. *Lawson v. Umatilla Cty.,* 139 F.3d 690, 692 (9th Cir. 1998). For continued employment to constitute a protected property interest, a person must have a reasonable expectation or a "legitimate claim of entitlement" to the benefit of continued employment. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

The long-standing rule in Idaho is that employment is presumptively "at-will" and either party may end the relationship at any time without incurring liability. *Jenkins v. Boise Cascade Corp.,* 108 P.3d 380, 387 (Idaho 2005). The only exception to the employment-at-will doctrine is that an employer may be liable if the termination of at-will employment is for a reason which contravenes public policy. *See Harms v. Jeffries,* No. 4:11-CV-00111-EJL, 2013 WL 791452, at *5 (D. Idaho Mar. 4, 2013), *aff'd*, 578 F. App'x 652 (9th Cir. 2014); *Jackson v. Minidoka Irrigation Dist.*, 563 P.2d 54, 58 (Idaho 1977). Anything that contravenes good morals or the established interests of society is considered a violation of public policy. *Jackson,* 563 P.2d at 57.

It is undisputed that Bingham was an at-will employee. Bingham does not claim that she had any expectation of continued employment separate from any other employee. However, Bingham does claim that the actions taken by Jefferson County were against public policy. So while the Court does not conclusively find that Bingham had a reasonable expectation of

employment as a matter of law, this could be circumvented by the fact that her firing was against public policy.

Jefferson County claims that regardless of the allegations contained in this suit Bingham would have been terminated based upon her performance and behavior. These opposing views create material issues that must be determined by a finder of fact. Summary judgement is therefore not appropriate on this claim.

2. State Actors

The Court should briefly mention that the second part of a § 1983 claim, after determining if there is a property interest, is to see if the "person" who committed the conduct acted under color of state law. Public employees act under color of state law when they act in their official capacity. *West v. Atkins,* 487 U.S. 42, 50 (1988). In a § 1983 claim, an individual agent can be liable either personally or in his official capacity. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985). To be personally liable, the individual agent must have directly caused the deprivation of a federal right while acting under color of state law. *Id.* at 166. If an individual agent is liable in his official capacity, liability is imputed to the governmental entity. *Id.*

Here there are no allegations against individuals. The only defendant is the legal entity Jefferson County. Any claims against Bingham's supervisors have correctly been imputed to the County. The conduct, therefore, is against government agents in their official capacity, which is squarely under the color of state law.

///
///
///
///
///

C. Count III & IV – Free Speech Claims

Plaintiff's third claim is for violations of Article I, Section 9 of the Idaho Constitution[4] and Count IV is for violations of the First Amendment of the United States Constitution. Bingham alleges that Jefferson County improperly discharged her from employment for exercising her right to free speech.

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968). The *Pickering* balancing test, as it has become known, requires a five-step analysis to determine whether a public employee's First Amendment free speech rights were violated by government retaliation:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Id.* The Court will address each element.

1. Public Concern

Whether speech is a matter of public concern is based on the "content, form and context" of the speech. *Connick v. Meyers,* 461 U.S. 138, 147-148 (1983). Allegations of corruption in a

---

[4] Article I, Section 9 is the freedom of speech portion of the Idaho Constitution. As such, this claim and the U.S. Constitutional free speech claim will be addressed simultaneously. *See, e.g., Nite Moves Entm't, Inc. v. City of Boise,* 153 F. Supp. 2d 1198, 1205 (D. Idaho 2001).

public program and misuse of funds clearly involve matters of public concern. *Garcetti v. Ceballos,* 547 U.S. 410, 425 (2006).

Jefferson County is adamant that the speech Bingham engaged in was not a matter of public concern, but rather office rumors and gossip. The Court disagrees. Here, Plaintiff questioned the misuse of government funds by fellow employees. She talked to a County Commissioner about her concerns. While Bingham's speech may have been minimal compared to what a person generally envisions when topics of corruption and public actors is brought up, it nonetheless meets the Supreme Court definition of a topic of public concern.

The reach and impact of Bingham's statements are not at issue under this prong, but rather the subject matter. Looking at the "content, form and context" could arguably broaden the scope of Bingham's statements; however, at the very least there are clear factual disputes that prohibit the Court from accepting Jefferson County's position that this was not a matter of public concern.

2. Private Citizen or Public Employee

Jefferson County believes that Bingham was not speaking as a private individual, but rather as a public employee because the speech related to her official job duties. As a result, they assert that such speech was not protected by the First Amendment. Bingham counters that although these comments were made at work, they were not made in her capacity as a public employee nor were they relative to her job duties.

The Ninth Circuit has held "that statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, . . . or if the speech was not the product of 'perform[ing] the tasks [the employee] was paid to perform.'" *Posey v. Lake*

*Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1127 (9th Cir. 2008). This analysis must be coupled with the U.S. Supreme Court's holding in *Lane v. Franks*, in which the Court held that:

> The mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.

*Lane v. Franks,* 134 S.Ct. 2369, 2379(2014) (emphasis added); *see also Garcetti,* 547 U.S. at 425. The analysis of whether the Plaintiff was speaking as a private citizen or a public employee has been determined by the Ninth Circuit to be a mixed question of law and fact. *Posey,* 546 F.3d at 1129.

Both parties tread a very fine line on this point. While Bingham obtained the information which lead to her concerns during a work function (and arguable as part of her duties), and spoke out about her concerns while at work, whether such speech was technically part of her duties as an administrative assistant for the public works department is questionable. It is undisputed that her role did include certain financial functions; however, those duties did not extend to the FEMA trip and its participants.

Furthermore, as Defendant has pointed out numerous times, Bingham never filed anything official in relation to her concerns. This fact might weigh in favor of her speech being seen as concerning a public employee topic coming from a private individual. This point is debatable.

3. Substantial or motivating factor in termination

The third *Pickering* factor asks whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action taken—in this case Bingham's termination. This factor is "purely a question of fact." *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th

Cir. 2009). When evaluating whether the government's adverse employment action was motivated by the employee's speech, the Court must assume the truth of the plaintiff's allegations. *Id.*

This is arguably the linchpin of this entire case. Bingham believes that her voicing concerns about the misuse of funds on the FEMA trip are the reason she was let go. Jefferson County contends that these comments had nothing to do with her firing and that there is no logical connection between Bingham's comments about the misuse of funds, particularly in regards to Emily Kramer, and the subsequent discipline from Paul Snarr—her supervisor. This assertion is contradicted by the record. Both Paul Snarr and Emily Kramer acknowledge the existence of an email from Kramer to Snarr in which Kramer lodges a complaint against Bingham and indicates that discipline is necessary. Dkt. 25-3, 25-4. This email evidences a (possible) connection between Bingham's comments and Jefferson County's actions.

The Court can see how "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [her] favor," *Zetwick,* 850 F.3d at 441, therefore, such cannot be determined on a motion for summary judgement and must be given to a fact finder to weigh the contrasting positions and render an appropriate decision.

4. Adequate justification for treating the employee differently

If the plaintiff has passed the first three steps of the *Pickering* test, the burden then shifts to the government entity to demonstrate that they had an adequate justification for treating the employee differently from other members of the general public. Under this prong of the test, the government must establish that its legitimate administrative interests outweigh the employee's First Amendment rights. *Garcetti,* 547 U.S. at 418.

Jefferson County considers the comments made by Bingham to be bickering, gossip, and rumors rather than protected free speech. Even assuming arguendo that Plaintiff engaged in protected speech, Jefferson County claims that these comments had a negative effect on employee morale, were a point of contention in the work place, and distracted Plaintiff and others from performing their duties. As a result, Jefferson County believes their interests outweigh Bingham's, and that they had justification to reprimand and ultimately terminate her.

This prong of the test, as well as the fifth and final element, are dependent on the prior elements and are very fact specific. Both sides have raised numerous factual issues which stand at odds with each other. Depositions, which have been taken recently, paint a very contrasting picture in this case. At this time the disputed facts prohibit the Court from being able to conclude whether or not there was justification for the way Jefferson County treated Bingham.

5. Adverse employment action absent the protected speech

Finally, the government bears the burden of demonstrating that it would have reached the same adverse employment decision even in the absence of the employee's conduct.

In this case, Jefferson County is adamant that Bingham was fired without any regard to her comments regarding the misuse of County funds on the FEMA trip. They state that Bingham's unauthorized attendance at trainings not related to her job duties and the inappropriate use of County equipment were the true reasons for her dismissal.

Construing all facts in the light most favorable to Plaintiff, however, it is not clear that the action taken here would have occurred absent the comments made by Bingham. If Jefferson County had other grievances with Bingham, as they assert, why did they not tell her about those until the day they terminated her? Was it coincidence, planned, or wholly irrelevant?

Defendant would have the Court believe that it was going to fire Bingham all along and that these statements are ancillary to the larger behavioral issues. Plaintiff would have the Court believe that these behavioral reasons were simply a pretext and that the County wanted to get rid of her because she raised concerns about financial misuse. As with the prior point, there are simply too many factual differences in play here for the Court to make a legal determination.

## V. CONCLUSION

Bingham's first cause of action is time barred and must be dismissed as a matter of law. Summary judgment is therefore **GRANTED** as to Count I regarding the Idaho Public Employee Protection Act.

Regarding the remaining claims, Bingham has adequately presented facts which, taken in the light most favorable to Bingham, create disputes which cannot be determined at summary judgment. Accordingly, the Court must deny the Motion for Summary Judgment as to Counts II, III, and IV.

## VI. ORDER

1. Defendant's Motion for Summary Judgment (Dkt. 12) is **GRANTED** in part and **DENIED** in part. Count I is dismissed. All other Counts remain.

2. The Defendant known as Jefferson County Public Works Department will be removed from the case caption as it is not a legal entity and simply a division of the other named Defendant, Jefferson County.

DATED: September 29, 2017

Honorable David C. Nye
United States District Court